**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Farwest Pump Company, et al., | No. CV-20-00465-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Secura Insurance, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Motion for Reconsideration or Rule 59 Motion for New Trial to Alter or Amend the Judgment. (Doc. 92.) Plaintiffs Farwest Pump Company and David Leonard (collectively Farwest) request the Court reconsider its October 31, 2022 Order pursuant to LRCiv 7.2(g) or, alternatively, alter or amend its October 31, 2022 judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[1] (*Id.* at 1.) The Motion is fully briefed.[2]

The Court will not restate the facts here as the parties are familiar with them. Both parties filed dispositive motions. (Docs. 64, 74.) In its October 31, 2022 Order, the Court denied Farwest's Motion for Partial Summary Judgment and granted Secura's Cross-

---

[1] In requesting the Court alter or amend its judgment, Farwest cites to both Rule 59(a) and 59(e) of the Federal Rules of Civil Procedure. (Doc. 92 at 1–2.) However, only Rule 59(e) applies to a court's order entering summary judgment, which is what Farwest challenges here. *See Ericsson, Inc. v. Cont'l Promotion Grp., Inc.*, No. CV O3-00375-PHX-JAT, 2006 WL 1794750, at *2 n.1 (D. Ariz. June 27, 2006).

[2] Secura filed a Response to Farwest's Rule 59 Motion, but it did not file a response to the Motion for Reconsideration, which would require an order from the Court. (Doc. 100.) Farwest filed a Reply to Secura's Response to the Rule 59 Motion. (Doc. 105.)

Motion for Summary Judgment. (Doc. 90.) In doing so, the Court interpreted the Policy that Farwest purchased from Secura and concluded it unambiguously excludes coverage for employee theft and unambiguously prohibits insureds from aggregating policy limits for a loss that occurred during multiple Policy Periods. (Doc. 90 at 8, 12.)

Farwest's Motion fails to present any clear errors or misapprehended matters that would change these conclusions. The Court will thus deny Farwest's Motion.

**I.   Discussion**

Under LRCiv 7.2(g), the Court will ordinarily deny motions for reconsideration "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." A motion for reconsideration must also "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court." *Id.*

Under Rule 59 of the Federal Rules of Civil Procedure, a party may file a motion to alter or amend a judgment no later than 28 days after the entry of judgment. Like the standard under LRCiv 7.2(g), reconsideration under Rule 59(e) is appropriate if the Court committed clear error or the initial decision was manifestly unjust, or if there is newly discovered evidence or an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Farwest identifies no newly discovered evidence or legal authority but contends "specific matters were overlooked or misapprehended by the Court." (Doc. 92 at 1–2.) Farwest raises a list of matters it believes the Court misapprehended in interpreting the Policy's (1) employee-theft exclusion and (2) aggregation-of-policy-limits prohibition. (*Id.* at 2–4, 6.) The Court will address each provision.

**A.   Employee-Theft Exclusion**

The Court concluded that the Policy unambiguously excludes coverage for employee theft. (Doc. 90 at 8.) This interpretation rests on the fact that the Policy's declarations pages, which note the coverage of theft, expressly inform Farwest that other forms and endorsements apply to the Policy, including form "CP1030 (06-07)." (Doc. 57-

1 at 37–43.) This form, in turn, specifically excludes acts of employee dishonesty and employee theft. (Doc. 57-1 at 95.)

The Policy's plain language undermines Farwest's arguments for reconsideration. First, Farwest contends that the phrase "SPECIAL–Incl theft" in the declarations is integral to the definition of a "Covered Cause of Loss" rather than a summary of basic coverage. (Doc. 92 at 3.) However, even if construed in that way, the phrase "SPECIAL–Incl theft" cannot be read in isolation and is conditioned by the employee-theft exclusion. *See Green v. Mid-Am. Preferred Ins. Co.*, 751 P.2d 581, 584–85 (Ariz. Ct. App. 1987) ("The insured must therefore look to the . . . endorsement for an explanation of how the . . . provision on the declarations page applies."); *Apollo Educ. Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 480 P.3d 1225, 1228 (Ariz. 2021) ("We also interpret the terms in the broader context of the overall contract.").

Next, Farwest argues that Form CP1030 (06-07), the Cause of Loss – Special Form, "is not referred to in either the Declaration or in the Coverage Form" and is not physically part of the declarations pages. (Doc. 92 at 3.) Farwest also insists the Forms Schedule, which identifies Form CP1030 (06-07) as the Cause of Loss – Special Form, does not come right after the declarations pages. (Doc. 92 at 7.) Rather, the "Forms only seem[] to appear to come right after the Declarations because they were attached within Secura's exhibit to the Joint Statement of Facts." (*Id.*) In any event, the Policy's plain language is again clear. The declarations pages, contrary to Farwest's contention, explicitly reference Form CP1030 (06-07) and state it applies to the Policy. (Doc. 57-1 at 43.) That plain language remains clear whether or not the Form itself immediately follows the declarations pages.

**B.     Aggregation-of-Policy-Limits Prohibition**

The Court also concluded that the Policy's Crime Coverage unambiguously prohibits insureds from aggregating policy limits for a loss that occurred during multiple Policy Periods. (Doc. 90 at 12.) Two portions of the Policy support this interpretation:

Sections E.1.k.3[3] and E.1.k.4.[4] Farwest argues the Court should have (1) included the Policy's definition of "occurrence" in its analysis; (2) "adjusted" the language of Section E.1.k.3; and (3) ignored Section E.1.k.4, which "is, at best, unclear." (Doc. 92 at 2, 4–6.)

First, the definition of occurrence does not change the Court's conclusion. Farwest contends that "[a]n occurrence, by definition, takes place during the current Policy Period and cannot also take place during the terms of two policies." (Doc. 92 at 2.) The Policy, however, indicates the opposite. The Policy's Crime Coverage defines "occurrence" as the following:

> (1) An individual act;
> (2) The combined total of all separate acts whether or not related; or
> (3) A series of acts whether or not related;
>
> Committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, ***except as provided under Condition E.1.k. or E.1.l.***

(Doc. 57-1 at 253–54 (emphasis added).) This definition does not limit an "occurrence" to those acts committed within one Policy Period when a loss falls under the conditions set forth in E.1.k. And in Sections E.1.k.3 and E.1.k.4, the Policy describes a loss and occurrence as spanning *more than one* policy period and limits insureds to the single highest applicable policy limit. (Doc. 57-1 at 247–48.)

---

[3] Section E.1.k.3 states "The most we [Secura] will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss. . . ." (Doc. 57-1 at 247.)

[4] Section E.1.k.4 provides insureds with a specific example that applies Section E.1.k.3:

> EXAMPLE NO. 2:
>
> The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy A and Policy B.
>
> POLICY A . . . Limit of Insurance of $125,000 . . . .
>
> POLICY B . . . Limit of Insurance of $150,000 . . . .
>
> The most we will pay for this loss is $150,000.

(Doc. 57-1 at 248.)

- 4 -

Second, the Court need not adjust the language of Section E.1.k.3. Farwest contends the Court should "adjust[]" the phrase "during the period of loss" to mean "*during the period in which the theft took place*," so that the word "period" refers to only one policy period. (*See* Doc. 92 at 6.) This is a bold proposal and adopting Farwest's construction would conflict with a plain reading of Section E.1.k.3 and the definition of occurrence. The word "highest" in Section E.1.k.3 implies a comparison, signaling that a period of loss may include multiple policy periods. (*See* Doc. 57-1 at 247.) Further, the definition of occurrence includes a series of related and unrelated acts committed by an employee. (*See* Doc. 57-1 at 253–54.) Acts of employee dishonesty that span multiple policy periods will necessarily create an occurrence and resulting period of loss that span not one but multiple policy periods.

Finally, contrary to Farwest's contentions, Section E.1.k.4's "EXAMPLE NO. 2" is not meaningless, inapplicable, or unclear. (*See* Docs. 92 at 5; 105 at 4.) Rather, this example explicitly demonstrates how Secura will cover an occurrence that spans multiple policy periods. (*See* Doc. 57-1 at 248.) The example in Section E.1.k.4 describes an occurrence that is, like here, a total or series of acts which span multiple policy periods, only applying to the occurrence the highest policy limit. The example is thus consistent with the definition of occurrence and Section E.1.k.3. Like its proposal to adjust the Policy's language, Farwest's suggestion that the Court simply ignore "EXAMPLE NO. 2" is unreasonable.

To be sure, Farwest presents an alternative interpretation of the Policy. However, an alternative interpretation alone is insufficient to establish ambiguity. *See State Farm Mut. Auto. Ins. Co. v. Wilson*, 782 P.2d 727, 728, 734 (Ariz. 1989). The interpretation must be reasonable. *See id.* In that regard, Farwest's interpretation falls short.

//
//
//
//

- 5 -

**II.      Conclusion**

Accordingly,

**IT IS ORDERED** Farwest's Motion for Reconsideration and Rule 59 Motion for New Trial to Alter or Amend the Judgment (Doc. 92) is **denied**.

Dated this 26th day of January, 2023.

Honorable Jennifer G. Zipps
United States District Judge